# Swanzey *versus* Parker.

*Warranty on transfer of note or bill of exchange.—Judgment by default against one defendant, how affected by judgment for co-defendant on trial.— Competency of party as witness.*

1. A person who sells a note or bill of exchange without endorsement thereby warrants it to be what it purports to be, and that it is neither forged nor fictitious, and a refusal to endorse does not release him from this responsibility ; he is therefore incompetent as a witness for his vendee.

2. In an action upon a joint contract, if one be defaulted and the other go to trial on a plea that is peculiar to himself, a judgment in his favour will not discharge the defaulted defendant ; otherwise if the matter pleaded be a defence common to both defendants.

3. Where in an action on a joint contract, judgment was taken by default against one of the defendants and a trial had against the other, on a plea which was common to both, it was *held*, that the defaulted defendant was incompetent as a witness for his co-defendant, and that although not incompetent as a witness for plaintiff, on the ground of interest, he was so, as being a party to the record, unless admitted by consent of all the other parties.

ERROR to the Common Pleas of *Juniata county*.

This was an action of *assumpsit* by Samuel H. Swanzey against Robert E. Parker and John Laughlin, partners doing business as R. E. Parker & Co.

The plaintiff declared on a note, of which the following is a copy:—

"WASHINGTON, December 9th 1862.

"Two months after date, we promise to pay to the order of ourselves, nine hundred and twenty-seven dollars, without defalcation, for value received.

"R. E. PARKER & Co.

"Endorsed, R. E. PARKER & Co."

This note was given by Laughlin to Pomeroy, who sold it to the plaintiff without any endorsement.

Judgment for default of appearance was taken against Laughlin, and the defendant Parker pleaded "*non assumpsit* and payment, with set-off;" and plaintiff replied "*non solvit,* and no set-off."

The material facts of the case were as follows:—

In December 1861, Robert E. Parker and John Laughlin entered into partnership as sutlers to the Second Regiment Rhode Island Volunteers, doing business under the name of R. E. Parker & Co. In June 1862 they were both taken prisoners, and held in Richmond till the 13th of September, when they were released on parole.

The note in suit was alleged to be for a balance due on loans made to the firm. The allegation of the defendants was, that after the defendants were released on parole as above stated they separated, Parker going into business in Juniata county, and Laughlin remaining in Washington as a clerk in the office of Mr. Pomeroy, a paymaster in the army, during which time it was averred he signed the note on which suit was brought.

On the trial John M. Pemeroy was offered as a witness on the part of the plaintiff, and rejected. John W. Laughlin was also called as a witness by plaintiff, and was willing to testify. The plaintiff handed to him a release in the following terms:—

"Know all men by these presents, that Samuel H. Swanzey hereby covenants with John W. Laughlin not to demand from him the amount of a note for nine hundred and twenty-seven dollars, dated December 9th 1862, drawn in the name of R. E. Parker & Co., or any part of said note, by any other suit than the one now pending against the said John W. Laughlin and R. E. Parker, partners, on the said note in the Common Pleas of Juniata county to No. 31 of February Term, A. D. 1864. Witness my hand and seal this 11th day of August, A. D. 1864.

"S. H. SWANZEY." [L. S.]

This release was acknowledged before a justice of the peace, as the act and deed of the releasor, and properly stamped. The court rejected the witness.

After a verdict and judgment for defendant there was a motion

for a new trial, in dismissing which the court below delivered the following opinion:—

"R. R. Parker and J. Laughlin were partners as sutlers in the army, but months before this note was given the partnership was dissolved. The note was signed and endorsed in the name of the previously existing partnership by John Laughlin, and given by him to John M. Pomeroy. It does not appear that R. E. Parker had any knowledge of the transaction. John M. Pomeroy was called as a witness by the plaintiff, and being examined on his *voir dire*, said, 'This note was originally given to me by R. E. Parker & Co. by John Laughlin. I sold it to Mr. Swanzey. Both payments endorsed are in my handwriting. I received the money. I have no interest in this suit that I know of. It was transferred before suit was brought. It was a *bonâ fide* transaction.'

"Under the principle ruled in the series of cases which began with Post v. Avery, upon a review of the authorities since the trial, we do not think there was error in rejecting the testimony of Mr. Pomeroy. Although not named as payee, he was so in fact. He was the first holder; the note was given to him by Laughlin, the drawer and endorser. Pomeroy held the note till after its maturity, and received the payments which are endorsed. There is nothing in the statement of Mr. Pomeroy to rebut the presumption that the sale to Swanzey was merely colourable, or to become a witness for the holder. He says he sold it to Mr. Swanzey, but he does not say when, for how much, or what induced him to do so. He says it was a *bonâ fide* transaction, but this is the witness's conclusion from facts not stated by him. He may have stated to Mr. Swanzey that he knew facts that would enable the holder to recover against the late firm of R. E. Parker & Co., and may have sold it at a heavy discount. There would be nothing morally wrong in this, but it would prevent him being a witness.

"Plaintiff's counsel contend that the ruling in Post v. Avery and subsequent cases only apply to a party to the record. In Clover v. Painter, 2 Barr 46, it is said that McClellan v. Mahon establishes the rule that a creditor or legal owner, who before suit brought transfers his debt with or without a valuable consideration, whether the assignment be real or fictitious, 'is not a competent witness for any purpose connected with the action.' 'The question is not whether he has a present interest, but had he at any time such an interest as disqualified him from giving testimony.' 'It enables the owner to bring his own oath into market, and recover a debt, otherwise valueless, by force of his own testimony. This glaring abuse of every principle of right, it is the design of recent decisions to prevent.' In this case Painter was the plaintiff, and Bachman, the witness offered, was not a party to the record. Painter had assigned to Bachman, who reassigned

to Painter. In Baily *v.* Knapp, 7 Harris 192, it is ruled that the payee of a promissory note who has passed it away, is not a competent witness for the holder in an action against the maker, ' and the manner of transfer, whether by delivery, endorsement, or assignment, makes no difference.' In Hatz *v.* Snyder, 2 Casey 512, it is again decided that a payee is not a competent witness in an action by his endorser against the maker, and the case of Baily *v.* Knapp referred to as establishing a rule well calculated to prevent the temptation to perjury.

" The second error assigned is the rejection of Laughlin, who was called as a witness by plaintiff, and willing to testify. The suit is brought against Parker and Laughlin as partners. Laughlin permitted judgment to be entered against him by default. Parker pleads to the action, and the case was tried against Parker only. If a verdict in favour of Parker would wipe out the judgment against Laughlin, then he could be a competent witness, for he is released from liability in any subsequent suit. The general rule is, that in joint actions upon contract where judgment is obtained against one by default or award of arbitrators, if the other defendant finally succeeds in defeating the plaintiff, it wipes out the judgment against his co-defendant: Ramsey's Appeal, 4 Watts 71. But this rule, like all others, has its exceptions, and only applies where the defence is general and shows that plaintiff has no cause of action against either of the defendants. Thus where a judgment is taken by default against one of two joint defendants, and the other pleads and goes to trial on a defence which is personal to himself, and obtains a verdict, this will not wipe out judgment against his co-defendant. This principle is established in the cases of Tallmadge *v.* Burlingame, 9 Barr 21, and Holt *v.* Bodey, 6 Harris 207. In the first case a judgment was entered against defendants jointly, on a note with warrant of attorney, and opened as to one who was a surety. The principal was admitted as a witness for the surety, because, the court say, against him judgment had passed, which would in no wise be affected by the proceeding to try the sufficiency of a defence peculiar to the surety. His fate was decided beyond disturbance. In Wolfe *v.* Finks, 1 Barr 440, where arbitrators, in an action against a principal and two sureties, found an award against the principal and one of the sureties, and in favour of the other, from which the principal debtor and surety appealed, it was said the award and judgment in favour of the surety was good, and from the peculiarity of our system the case might properly proceed on the appeal against the appellants. In that case, although the note was a joint one, the discharge of one surety from all liability on the note, by means of the award in his favour, unappealed from, did not operate to release or discharge either the principal or the other surety. In Holt *v.* Bodey, 6 Harris 212, where a

[Swanzey v. Parker.]

*scire facias* issued to revive a judgment against two defendants, the court say, there may be a judgment against one defendant and in favour of the other.

"In 1 Greenleaf's Evidence, § 356, it is said 'in actions on contracts it was formerly considered that the contract being laid jointly, a judgment by default against one of several defendants would operate against him only in the event of a verdict against the others, and accordingly he has been held inadmissible in such actions as a witness in their favour. On a similar principle, a defendant thus situated has been held not a competent witness for the plaintiff, on the ground that, by suffering judgment by default, he admitted that he was liable to the plaintiff's demand, and was therefore directly interested in throwing part of the burden on another person. But the whole subject has more recently been reviewed in England, and the rule established, that where one of the two joint defendants in an action on contract has suffered judgment by default, he may, *if not otherwise interested in procuring a verdict for the plaintiff*, be called by him as a witness against the other defendants.' And in note 1, 'Thus he has been admitted, with his own consent, as a witness to prove that he is the principal debtor, and that the signatures of the other defendants, who are his sureties, are genuine. But generally he is interested, either to defeat the action against both, or to throw on the other defendant a portion of the demand, or to reduce the amount to be recovered.'

"The authorities cited show very conclusively that in actions upon contract a verdict and judgment in favour of one joint defendant does not necessarily and in all cases wipe out a previous judgment permitted by default against a co-defendant. And it is equally well settled that in some cases a judgment for defendant will sweep away a previous judgment by default against a co-defendant. This depends upon the nature of the defence. If it goes to the entire cause of action and shows that the plaintiff has no cause of action against any of the parties, a judgment in favour of one defendant wipes out a previous judgment by default against a co-defendant. But if the evidence proves that the defendant who suffered judgment by default honestly owed the debt, and there was no indebtedness by his co-defendant, that his defence was personal and peculiar to himself, without affecting or impairing the liability of his co-defendant, the judgment subsists as binding and conclusive.

"Why, then, should the verdict and judgment in favour of Parker sweep away the judgment against Laughlin? He was the drawer and endorser of the note. He gave it to Mr. Pomeroy and received the money, and this months after the firm was dissolved and the dissolution known to Mr. Pomeroy. Upon the evidence before us, Mr. Laughlin was clearly liable for its payment and Mr. R. E.

[Swanzey *v.* Parker.]

Parker was not, for there is no evidence that he had any know-ledge of the transaction. Although the plaintiff did not state what he intended to prove by Mr. Laughlin, we understood he was offered to prove that he appropriated the money to the pay-ment of the partnership debts. The existence of the firm, its dissolution, that Mr. Laughlin had drawn and endorsed the note and given it to Mr. Pomeroy, were satisfactorily proven and not controverted; and the only link wanting in the chain to enable the plaintiff to recover was that the money had been appropriated by Mr. Laughlin for the use and benefit of the late partners. If we are correct in the opinion that the judgment against Laughlin is not affected by the judgment in favour of Parker, then Laughlin is interested in procuring a judgment against Parker, for it relieves Laughlin of one-half the debt for which he is now liable.

" The plaintiff's counsel relies on Whitehead *v.* Bank of Pitts-burgh as similar to and ruling this case. In that case no judgment had been obtained against Whitehead, who was a partner and signed the note after the firm was dissolved, but under authority from the partners to do so. He was called as a witness by plain-tiff, and admitted upon being released from any other action than the one then pending against the firm of Whitehead and others on the note. Under these circumstances he was testifying against his interest. After the release there could be no recovery against him alone, and his testimony went to charge him with a liability as one of the partners. But in the present case Laughlin is fixed for the whole amount, and his testimony, by procuring a recovery against Parker, relieves him from one-half of his present liability.

" The only case referred to which conflicts with the views of this case we have expressed, is the dictum of Judge Rogers in Hayes *v.* Gudykunst, 1 Jones 221. In that case Samuel Wetzel gave his note to the plaintiff, to which he signed his own name and the name of Gudykunst, who it was alleged was a silent partner. Suit was brought against Wetzel & Gudykunst on the note. Gudykunst denied the partnership and there was an award by arbitrators against both defendants, from which Gudykunst alone appealed and there was a verdict in his favour. Afterwards suit was brought by same plaintiffs against Gudykunst on a promise to pay the debt of Wetzel in consideration of forbearance, and Wetzel was admitted as a witness to prove the promise.

" In delivering the opinion of the court, Judge Rogers says: ' Notwithstanding the verdict, Wetzel remains answerable for the debt on the original cause of action, for, by the finding of the jury, the judgment against Wetzel, although unappealed from, is swept away ;' and cites Ramsey's Appeal, 4 Watts 75. It will be found, on reference to Ramsey's Appeal, no authorities are cited by the court, and the appeal by Sterrett Ramsey was still pending, so that the nature of his defence could not be known, whether per-

sonal to himself, or such as defeated the cause of action against both Sterrett and William Ramsey.   An amount sufficient to cover the award against William Ramsey, then deceased, whose estate was in court for appropriation, was suspended until the determination of the appeal by Sterrett.   The case was afterwards tried and a verdict for defendant, upon evidence which proved that the plaintiff had no cause of action against either of the defendants.

" In Hayes v. Gudykunst, Judge Rogers had shown in a previous part of his opinion that Wetzel was a disinterested witness, irrespective of the question whether the judgment on the award was swept away or not.   On page 224 he cites the following language : ' Suppose the action results in a verdict and judgment for the plaintiff; what does the witness either gain or lose by it ? He remains the debtor of the plaintiff as before the recovery, and if Gudykunst is compelled to pay, he has his remedy over against Wetzel, and may recover the amount paid with costs of suit.   He is therefore testifying against his own interest, which is certainly no objection to his competency when he is willing to testify.'

" The legislature, by the Acts of 4th May 1852 and 12th April 1858, have declared their intention to abolish all the common-law technicalities on the subject of joint parties to an action, whether plaintiffs or defendants, which so frequently prevented the due administration of justice by defeating a recovery by mistake in joining too many or too few plaintiffs or defendants.   Under these acts courts are authorized to strike out or change the names of parties, plaintiffs or defendants, so as to permit the case to be tried on its merits, and their action has been sanctioned by the Supreme Court and these statutes liberally construed.   See 1 Wright 130 ; 2 Id. 72.   If Laughlin had not suffered judgment by default, and the case had gone to trial against both defendants, and the plaintiff discovered he had only a cause of action against Laughlin, the court, at his request, could strike out the name of Parker, and thus enable the plaintiff to recover against Laughlin.   Why then should Laughlin be permitted to place himself in a better situation, by suffering a judgment by default, than he would have been if he had gone to trial and had a verdict against him, after the name of Parker had been stricken from the record as a defendant ?   Yet this would be the result, if a verdict in favour of Parker wipes out the judgment against Laughlin.

" The construction would not avoid the mischief intended to be remedied by our recent statutes of amendments, for if there was a misjoinder of defendants, the real debtor, by suffering judgment by default, would have it swept away, by a verdict in favour of a co-defendant against whom the plaintiff had no cause of action. We cannot perceive the remedy in such a case, for when plaintiff discovered from the evidence that he could not recover against the defendant who had forced the issue, he could not safely dis-

[Swanzey *v.* Parker.]

continue, for this would wipe out the previous judgment against the real debtor as effectually as a verdict in favour of his co-defendant.

" Again, courts have invariably endeavoured to avoid circuity -of action, and will not set aside an honest and valid judgment which the defendant could not gainsay, and turn the plaintiff round to another action, unless there was an unavoidable legal difficulty in the way, which we cannot discover in this case.

" Our ruling in this case cannot prejudice Mr. Laughlin finally. In an action of account rendered between the former partners, if Mr. Laughlin can show by other evidence than his own oath that the amount in controversy was applied to pay firm debts, he will obtain a credit for it; and if it was so applied we presume he can produce evidence of such payments. But we do not think he can be permitted in any form of action to charge his partner with one-half of the money received from Mr. Pomeroy upon his own evidence alone.

" For the reasons stated, we think there was no error in rejecting Mr. Pomeroy and Mr. Laughlin as witnesses, and we therefore overrule the motion for a new trial, and direct judgment to be entered on the verdict."

Which was the error assigned here for the plaintiff.

*Edmund S. Doty*, for plaintiff.—1. Was John M. Pomeroy a competent witness for the plaintiff? The note in suit is peculiar. It is not payable to any person by name; nor to bearer; but to the order of the makers, and is endorsed by them. Mr. Pomeroy's name does not appear on the note, neither is he a party on the record. There is nothing in the case to show that the plaintiff could not recover without Pomeroy's testimony, and the principle of no adjudicated case, it is believed, will exclude him. In every case, from Post *v.* Avery, 5 W. & S. 509, in which the authority of Steele *v.* The Insurance Company was shaken, till Mahon *v.* McClelland, 1 Barr 364, where it was finally overruled, the witness offered was a party on the record. And the principle ruled is, that an assignment of a cause of action, merely colourable, does not divest the plaintiff's title so as to make him a competent witness; and that every assignment is deemed colourable when no other motive can be made to appear. See also Phinney *v.* Tracy, 1 Barr 175; Clover *v.* Painter, 2 Id. 46; Roshing *v.* Chandler, 3 Id. 375; Gates *v.* Johnston, Id. 52. The court will not undertake to judge whether an assignment is colourable, by one not party to the record: Cornell *v.* Vanartsdalen, 4 Id. 364. See also 7 Id. 325, and 10 Id. 430.

Hutz *v.* Snyder, 2 Casey 511, on which the court relied, differs from this case in two important particulars. So Bailey *v.* Knapp, 7 Harris 192. An endorsement was not necessary here, because

[Swanzey v. Parker.]

the note was payable to bearer, and transferrable by delivery. The court does not decide that where a note, payable to the order of the drawers who endorse it, is transferred in the usual course of business, and for a valuable consideration, by delivery, the person into whose hands it may come would be incompetent as a witness for a subsequent holder in an action against the maker. Paper of this description may undergo many transfers, and the doctrine contended for by the defendant would prevent any one who has been the owner during these successive transfers from becoming a witness. The witness would be competent at common law because not on the record, and not interested. The verdict could not be given in evidence for or against him in any subsequent action. And this is the only test of interest. His name nowhere appearing on the paper, he could not be liable over in any event; hence a release was not necessary. Gulliford v. Skinner, 9 Barr 334, and Evans v. Dela, 11 Casey 451, are very similar to this case.

2. The next question is, was Laughlin competent? He was willing to testify. He was not called to prove the partnership. That had been proved. See Mercy v. Matthews, 9 Barr 112. He was competent without a release, because interested to defeat the plaintiff: Marshall v. Gouler, 10 S. & W. 164; 1 Troubat & Haly's Prac. 249, ed. of 1837; 2 Arch. Prac. 9; 2 Troub. & Haly 440; Ramsey's Appeal, 4 Watts 71. There never could have been a recovery against Laughlin in any subsequent suit on the note: Hayes et al. v. Gudykunst, 1 Jones 226. The court assumed that as Laughlin had executed the note after the dissolution of the partnership the judgment against him would stand, notwithstanding a verdict for the defendant, and that he was interested in taking one-half the burden off his own shoulders, and casting it on the defendant. This was a mistake. The partnership being established by other testimony, the note signed with the firm name was *primâ facie* evidence that it was given for the debt of the firm: Foster v. Andrews, 2 Penna. Rep. 160. And according to Purviance v. Dryden, 3 S. & R. 402, the witness was competent to prove the receipt of the money on behalf of the firm. See also Woddewell v. Keever, 8 W. & S. 63, is of similar import. If the witness was competent for any purpose it was error to reject him.

This case is not an exception to the general rule that in joint actions upon contract, where judgment is obtained against one defendant by default, if the other defendant finally succeeds in defeating the plaintiff it wipes out the judgment against his co-defendant. The defendant Parker had no defence peculiar to himself. The partnership was clearly proven and not denied, and the note being signed with the firm name, Parker was *primâ facie* liable for it as a debt of the firm; and it is entirely gratuitous to say that the partnership was dissolved. True, the defend-

14 Wr.—29

[Swanzey *v.* Parker.]

ants did not do business together after their capture in 1862, but they never dissolved in fact, and still less is there ground for the assertion that Pomeroy had any notice or knowledge of a dissolution. The plaintiff was not called on to state what he purposed to prove by the witness. It was not, as the court supposed, to show that the note was given for money borrowed, and that it was appropriated for the benefit of the firm; but to prove that it was given for a prior indebtedness of the firm, and for the purpose of closing up its business. And for this purpose the witness was certainly competent, even without a release: Houser *v.* Irvine, 3 W. & S. 347; Brown *v.* Clark, 2 Harris 470; Heberton *v.* Jepherson, 10 Barr 124. But with the release the case of Whitehead *v.* Bank of Pittsburgh, 2 W. & S. 172, puts the question out of doubt, and the reasons for admitting the witness here are stronger than in that case.

The judge seems to think that the release was not broad enough. He says it does not cover the judgment against Laughlin in this action, and that there is no suit now pending against him. I understand it differently. The plaintiff covenants not to. demand from the witness the amount of the note, or any part of it, by any other suit than the one now pending against the said John W. Laughlin and R. E. Parker, partners, on the said note, in the Common Pleas of Juniata county, to No. 31 of February Term 1864, referring as explicitly as language can to this very debt. The action is "pending" against Laughlin so long as it is undecided as regards Parker. The legal effect of the verdict in favour of Parker would be to wipe out the judgment against Laughlin: Ramsey's Appeal, 4 Watts 75; Hayes *v.* Gudykunst, 1 Jones 226.

The plaintiff has no judgment against Laughlin since the verdict in favour of Parker. There cannot be two judgments in a joint action on contract.

*Alexander & Parker*, for defendant, presented as their argument the opinion of the court below on the motion for a new trial.

The opinion of the court was delivered, June 29th 1865, by

Strong, J.—The fundamental question of fact in this case appears to have been whether the note upon which the suit had been brought was the note of R. E. Parker as well as that of Laughlin, the other defendant. It had been given to Pomeroy by Laughlin, and Pomeroy had sold it to the plaintiff. By the sale, he warranted it to be what it purported, the note of both Parker and Laughlin. A transferrer, even by delivery, of a promissory note or a bill of exchange, though he does not generally warrant the solvency of the maker, does warrant that the bill or note is not forged or fictitious; that it is what it appears to be: Jones *v.* Ryde, 5 Taunt. 489. In that case Chief Justice

Gibbs said, " Declining to endorse the bill does not rid him of that responsibility which attaches on him for putting off an instrument as of a certain description which turns out to be not such as he represents it." Hence, when Pomeroy was called to testify for his vendee, he was called to support his own warranty. For such a purpose he was incompetent, without reference to the rule of policy enunciated in Post v. Avery and its kindred cases.

It remains only to inquire whether Laughlin was a competent witness for the plaintiff. He was one of the defendants. He made the note in suit, signing it R. E. Parker & Co. The suit was brought against him and Parker as partners, and judgment for default of appearance was entered against him. Parker alone pleaded to issue, and the issue was tried against Parker singly. Under these circumstances, certainly Laughlin cannot testify to fasten the debt upon Parker jointly with himself, unless a verdict and judgment for Parker would sweep away the judgment already obtained against him for default of appearance. The plaintiff in error contends that such would be the effect of a verdict and judgment against the plaintiff, and he relies in support of his position upon Ramsey's Appeal, 4 Watts 71. That case is very briefly reported. All that we are informed about it is that a joint suit had been brought against William Ramsey and Sterrett Ramsey, and referred to arbitrators, who awarded $800 against both defendants. From this award Sterrett Ramsey alone appealed. Before the appeal was determined William Ramsey died, and the matter before this court was the distribution of his estate. One, among other questions, was whether the plaintiff in the suit was entitled to immediate payment of his award against William Ramsey; and, in delivering the judgment of this court, Judge Rogers said, " The situation of that claim is such that we cannot now decide whether the plaintiff will ultimately be entitled to the money or not. The appeal of Sterrett Ramsey is still pending, and until that is disposed of, it is impossible to say whether anything may be ultimately found due; for if Sterrett Ramsey succeeds on the appeal, it will be virtually a finding in favour of William Ramsey's estate. In that event, notwithstanding his judgment, he may recover nothing from the estate of William Ramsey." Though this may have been entirely correct, as applied to the case then under consideration, it is not very satisfactory as the assertion of a rule. No reason is given, no authority is cited, nor are we informed of the nature of the action brought against the two Ramseys or of the character of Sterrett's defence. As a universal rule, the position taken by Judge Rogers cannot be sustained. It is certainly not correct in regard to actions founded on torts; and it has been repeatedly held that in actions upon joint contracts, if one defendant be defaulted and the other go to trial on a defence personal to himself, a judgment in

[Swanzey *v.* Parker.]

his favour does not discharge the defaulted defendant.   The plaintiff may enter a *nolle prosequi* against the defendant who pleads matter in his personal discharge, and thus he becomes no longer a party to the record: 1 Williams's Saunders 207, a.; Salmon *v.* Smith, and cases cited in 1 Greenleaf's Evidence, § 356. The effect of the judgment depends on the character of the plea. If the defence be not peculiar to the defendant, who pleads to issue matter in his personal discharge, and such as he only can set up, his success must destroy the judgment obtained against his co-defendant by default; for if it were not so, the record would show a judgment against one of the defendants upon a state of facts which the same record conclusively establishes as having no existence.   This would be an absurdity not to be tolerated.   In a suit against two upon a joint contract, ordinarily there can be no recovery against one, because neither is liable if the contract was not the joint contract of both.   And it is only when one sets up a defence that the other cannot use, that the case is otherwise.   Then if one defendant pleads " infancy," or a " certificate in bankruptcy," " *ne unques executor*," or " that he was a surety in the contract and that he has been discharged in equity by the conduct of the creditor," if he succeeds in maintaining his plea, a judgment in his favour does not relieve his defaulted co-defendant.   In such a case there is no contradiction in the record.   On the other hand, the general rule is, as stated, that when the plea of the co-defendant who goes to trial would have equally availed his defaulted co-defendant had he joined in pleading it, it will, if maintained, sweep away the judgment obtained by default.   This was held in Pipe *v.* Steele & Harvey, 2 Ad. & E. (N. S.) 733, a case closely resembling the present. It was *assumpsit* upon two bills of exchange against Harvey & Steele.   Harvey suffered judgment by default.   Steele pleaded, among other things, that Harvey was in partnership with him and drew the two bills without his knowledge, in fraud of the partnership, for his own private purposes, whereof the plaintiff had notice, and that neither the partnership nor Steele had received any value.   On the trial Harvey was permitted to testify for the plaintiff against Steele, and the Court of King's Bench ruled the admission to be right.   Lord Denman, in delivering the judgment of the court, after remarking that the objection that the witness was a party to the record had been deliberately overruled in Warrall *v.* Jones, 7 Bingh. 795, proceeded to say it was a question of interest.   He referred to the case of Green *v.* Sutton, 2 Moody & R. 269, where Lord Abinger rejected a person so situated, on the ground that having admitted himself liable by suffering a judgment by default, he is directly interested in throwing a part of the burden on another, and he added that " if the joint liability were an established fact at the time when the witness is called,

[Swanzey v. Parker.]

this argument would be conclusive. But, on the contrary, it is the very fact in issue, and the witness's interest is that it may not be established, because, unless it is, no judgment can be had against him in this action. He indeed, after suffering judgment by default, may have little ground for expecting that he will ultimately escape the consequences of a joint liability; but his conduct even in that respect might admit of explanation. He might say it occurred through an oversight, or his motive may have been to save the expense of his disputing what he was aware that his co-defendant would be able to disprove. This is the very issue which that defendant is actually maintaining; if successfully, this witness shares the fruit of his victory, for the judgment will be in favour of both." Our own case of Hayes v. Gudykunst, 1 Jones 221, though turning upon different questions, recognises the principle of Pipe v. Steele & Harvey. The suit was upon a collateral promise, but there had been a previous suit against Wetzel and Gudykunst upon a note signed by Wetzel with his own name and that of Gudykunst, who was alleged to be a silent partner. That previous case had been arbitrated and an award had been made against both Wetzel and Gudykunst, from which the latter appealed. Wetzel did not appeal. At the trial Gudykunst pleaded *non assumpsit* and denied the partnership, and on that issue obtained a verdict and judgment in his favour. Upon such a state of facts this court declared that "Wetzel remained answerable for the debt *on the original cause of action*, for, by the finding of the jury, the judgment against Wetzel, though unappealed from, is swept away."

None of the cases referred to by the learned judge of the Court of Common Pleas, or by the counsel of the defendant in error, are inconsistent with the doctrine of either Pipe v. Steele & Harvey or Hayes v. Gudykunst. They come within the admitted exception to the general rule. In all of them the defendant who succeeded, after a default of his co-defendant, or after an award against both from which he alone appealed, set up matter in his personal discharge, and not a defence which was equally available by both defendants. In both Talmage v. Burlingame, 9 Barr 30, and Holt v. Bodey, 6 Harris 207, the successful defendants were sureties, and the ground taken for their discharge was not, that the debt had no existence or that there had been no joint contract, but that the creditors' conduct had relieved them as sureties. Such, however, is not this case. The defence set up by Parker is not peculiar to himself. It is that he was never a party to the note, and that no such joint contract was made as the plaintiff's declaration avers. His defence, if true, is equally a defence for Laughlin, for neither of the defendants can be liable in this suit unless they were joint promissors. The conclusion is therefore inevitable that on the issue tried a verdict and judg-

ment in favour of Parker must operate to wipe away the judgment by default against Laughlin. And the consequence of this is that, though it might be the interest of Laughlin to prove the other defendant equally liable with himself, he has a greater interest against the plaintiff, for if his co-defendant succeeds he is himself discharged from the judgment already obtained against him, and the plaintiff has released him from any other action. He was not then incompetent, on account of interest, to testify on behalf of the plaintiff.

It is suggested, however, that our Acts of Assembly of May 4th 1852 and April 12th 1858, on the subject of amendments, may prevent the extinction of the judgment by default against Laughlin, as a consequence of a verdict and judgment in favour of his co-defendant. These acts, it is said, authorize the court to strike out the names of parties, plaintiffs or defendants, and try the case against the others. It is not perceived how those acts can have any effect upon the present case. If Laughlin had not suffered judgment by default, but the case had gone to trial against both defendants, and if, the plaintiff discovering that he had no cause of action against Parker, the court had, at his request, struck Parker's name from the record, there could have been no recovery against Laughlin for the cause set out in the declaration.

But though the witness was not incompetent to testify for the plaintiff on account of interest, was he not because of his being a party to the record? It was early doubted, in the English courts, whether a party to the record can be permitted to testify, though he has no interest. In Mant *v.* Mainwaring, Hill *et al.*, 8 Taunt. 139, it was ruled that in an action on a joint contract against several partners, one of the defendants, having suffered judgment to go by default, is not admissible to prove the partnership of himself and the other defendants without their consent, although the proposed witness is released from all other actions than that on which he is called to give evidence. The exclusion of the witness was put upon two grounds: first, that he was interested, the judgment against him operating only in the event of a verdict against the other defendants; and, secondly, that a party to a suit cannot be examined. See also 2 Camp. 333, n. But in Worrall *v.* Jones, 7 Bingh. 795, it was directly ruled that a party to a suit is a competent witness, provided he is disinterested. The earlier English doctrine seems, however, to be elsewhere recognised, though not universally. In Schermerhorn *v.* Schermerhorn, 1 Wend. 119, it was ruled that one of several makers of a promissory note, discharged as an insolvent debtor, his discharge unimpeached and himself released from all liability by the joint maker of the note, has no interest in a suit commenced

[Swanzey v. Parker.]

on such a note; yet, being a party to the record, he is incompetent as a witness, although the jury pass upon his liability and find a verdict in his favour. The rule was admitted to be different in actions for torts. And in this state it is apparently settled that in actions on contract at least, a party to the suit is an incompetent witness, though he may be disinterested. I confess I prefer the English doctrine laid down in Worrall v. Jones, but our cases are too numerous and direct to be disregarded. In Wolf v. Fink, 1 Barr 435, which was an action against three makers of a promissory note, there was an award of arbitrators against two of the makers and in favour of Kennedy, the third, he being a surety. Wolf, another of the defendants, and also a surety, appealed for himself alone, and offered in evidence at the trial of the appeal the deposition of Stewart, the remaining defendant, who had not appealed from the award, and who was a certificated bankrupt. This court said, "It must be admitted that the witness had not a particle of interest in the event of the suit. The only tenable objection is that at the time of the impetration of the writ and the award he was a party to the suit." Yet he was held incompetent for that reason; and very often since has the same doctrine been reasserted. It is true that the witness was offered for his co-defendant, as was the fact in most of the other cases, in which being a party to the suit was regarded a sufficient reason for exclusion; but this has not always been the state of facts. It has also been held that the same policy excludes a party to the suit from testifying in behalf of his co-plaintiff, though he is uninterested. And if it alone is a sufficient reason for holding the witness incompetent at all, it can make no difference by which party he is called. In Scott v. Lloyd, 12 Peters 149, it was resolved that a party is not admissible without the consent of all parties to the record, and that the privilege of exemption is not personal and several, but mutual and joint.

Controlled by this course of decision, we are led to the conclusion that Laughlin was not a competent witness for the plaintiff.

The judgment is affirmed.